**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOSE ERAZO,<br><br>Plaintiff,<br><br>v.<br><br>DR PEPPER SNAPPLE GROUP –<br>AVENEL RDC; DR PEPPER/SEVEN-UP,<br>INC.; DR PEPPER/SEVEN-UP, INC. FOR<br>MOTTS LLP; AMAN SUKHRAM;<br>CORPORATION 1-5; JOHN DOES 6-10; and<br>MANAGERS 11-15<br><br>Defendants. | Hon. _____<br>Case No. _____<br><br>**NOTICE OF REMOVAL** |

**TO:**   THE CLERK OF COURT;
**AND TO:** PLAINTIFF, NAMED ABOVE, AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** Keurig Dr Pepper Inc., (formerly known as Dr Pepper Snapple Group, and incorrectly captioned as "Dr Pepper Snapple Group – Avenel RDC"), Dr Pepper/Seven-Up Inc., and Mott's LLP (incorrectly captioned as "Dr Pepper/Seven-Up, Inc. For Motts LLP") (collectively "the Corporate Defendants") hereby remove to this Court the State Court Action (as defined below) pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and as ground for their removal state as follows:

## I.   STATEMENT OF THE CASE

1.     On January 18, 2021, Plaintiff Jose Erazo ("Plaintiff") filed a complaint (the "Complaint") in the Superior Court of New Jersey, Law Division: Union County entitled *Jose Erazo v. Dr Pepper Snapple Group – Avenel RDC; Dr Pepper/Seven-Up Inc.; Dr Pepper/Seven-Up, Inc. For Motts LLP; Aman Sukhram; Corporation 1-5; John Does 6-10; and Managers 11-15*, Docket No. UNN-L-180-21 (the "State Court Action").

1

2.     On May 28, 2021, the State Court notified Plaintiff in writing of its intent to dismiss the matter in sixty days for lack of prosecution, due to Plaintiff's delay in serving the Summons and Complaint for four months.   Plaintiff subsequently served the Corporate Defendants on July 9, 2021.

3.     True and correct copies of all process, pleadings and orders on file with the Clerk of the Superior Court of New Jersey, Union County, and the Civil Case Information Statement are attached as Exhibit A hereto ("Ex. A").

4.     In this lawsuit, Plaintiff alleges that all of the defendants named in the Complaint failed to pay Plaintiff overtime compensation, as well as discriminated and retaliated against him. Plaintiff asserts the following twelve (12) causes of action in his Complaint, set forth in the same order as listed in the Complaint: (1) New Jersey Wage and Hour Law ("NJWHL") – Failure to Pay Overtime; (2) violation of the Conscientious Employee Protection Act ("CEPA"); (3) NJWHL – Unlawful Adverse Employment Action; (4) Violation of Public Policy ("*Pierce* Claim"); (5) Wage Theft Act ("WTA"), 2019 N.J. Laws, ch. 212 §§ 2, 4 Retaliation and/or Unlawful Adverse Employment Action; (6) Intentional Infliction of Emotional Distress; (7) Negligent Infliction of Emotional Distress; (8) Respondeat Superior; (9) Workers' Compensation Retaliation; (10) Termination on the Basis of Race and/or National Origin in Violation of New Jersey Law Against Discrimination ("NJLAD"); (11) Termination Due to Disability in Violation of NJLAD;  and (12) Failure to Offer Reasonable Accommodation in Violation of the NJLAD.

## II.   DIVERSITY JURISDICTION

5.     This Court has subject matter jurisdiction in this case based upon diversity of citizenship under 28 U.S.C. § 1332 because the lawsuit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

92458401v.2

## A.  Complete Diversity Between Properly Joined Parties

6.      On information and belief, Plaintiff is a resident of the State of New Jersey. Indeed, the Complaint alleges that Plaintiff "reside[s] at 48 6th Street, Apt. 2, City of Elizabeth (07203), County of Union, State of New Jersey…." *Ex. A*, Complaint, p.1.

7.      Defendant Keurig Dr Pepper Inc. ("KDPI") is incorporated under the laws of the State of Delaware and has its principal place of business in Frisco, Texas. (*Exhibit B*, Declaration of Harold Busch, Esq. (hereinafter "Busch Decl."), ¶ 4).  Under 28 U.S.C. § 1332(c)(1), a corporation shall be deemed to be a citizen of any State in which it is incorporated and the State where it has its principal place of business.  Therefore, KDPI is a citizen of Delaware and Texas.

8.      Defendant Dr Pepper/Seven-Up Inc. ("DPSU") is incorporated under the laws of the state of Delaware and has its principal place of business in Frisco, Texas. (*Id.* at ¶ 5).  Therefore, under 28 U.S.C. § 1332(c)(1), DPSU is a citizen of Delaware and Texas.

9.      Defendant Mott's LLP ("Mott's") is a Limited Liability Partnership.  (*Id.* at ¶ 6). The citizenship of an LLP is determined by the citizenship of its partners.  *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 Fed. App'x 273, n.5 (3d Cir. 2010) (*citing Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).  The partners of Mott's are MSSI, LLC ("MSSI") and Americas Beverages Management GP ("ABM").  (*Id.*).  The sole member of MSSI is ABM.[1]  (*Id.* at ¶ 7).  The partners of ABM are Snapple Beverage Corp. and Nantucket Allserve, Inc.[2]  (*Id.* at ¶ 8).  Snapple Beverage Corp. is incorporated under the laws of the State of Delaware with its principal place of business in Frisco, Texas.  (*Id.* at ¶ 9).  Nantucket Allserve is

---

[1] For the purposes of determining diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members.  *Wood*, 592 F.3d at 420.

[2] For the purposes of determining diversity jurisdiction, the citizenship of partnership is also determined by the citizenship of its partners.  *Id.*

92458401v.2

incorporated under the laws of the State of Delaware with its principal place of business in Frisco, Texas.  (*Id.* at ¶ 10).  Accordingly, Mott's is a citizen of Delaware and Texas.

10.     On information and belief, Aman Sukhram ("Sukhram") is a citizen of the State of New Jersey.   However, for the reasons detailed below, Sukhram's citizenship should be disregarded for the purposes of diversity jurisdiction and removal based on the fraudulent joinder doctrine.  Additionally, Sukhram has not yet been properly served in this matter.

11.     The remaining Defendants are named as "Doe" Defendants, and as such, are disregarded in determining the existence of diversity.  28 U.S.C. § 1441(a).

**B.  Fraudulent Joinder**

12.     Diversity jurisdiction normally requires the existence of complete diversity, i.e., all defendants must have different citizenship from that of the plaintiff.  *City of Indianapolis v. Chase Bank of New York*, 314 U.S. 63, 69-70 (1941).  However, the doctrine of fraudulent joinder provides an exception to the requirement that removal be predicated solely upon complete diversity.  *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).  Thus, in a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendants may still remove the action if they can establish that the non-diverse defendant was fraudulently named or joined solely to defeat diversity.  *Id.* at 216.  A defendant is fraudulently joined where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant.  *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (internal quotations omitted). If the Court determines that the joinder was fraudulent in this sense, it can disregard, for jurisdictional purposes, citizenship of the non-diverse defendant, assume jurisdiction over a case, dismiss the non-diverse defendant, and thereby retain jurisdiction.  *Briscoe*, 448 F.3d at 216 (internal quotations omitted).

92458401v.2

13.     Here, it is clear that Plaintiff improperly joined Sukhram in order to defeat diversity jurisdiction.  As discussed below, there are no reasonable bases in fact or colorable grounds supporting any of the claims asserted against Sukhram; therefore, the Court should disregard Sukhram for purposes of determining diversity jurisdiction exists.

   i.     *Plaintiff's Claims under NJWHL and WTA Are Baseless Because Sukhram Was Not Plaintiff's Employer.*

14.     Plaintiff alleges that he was not paid overtime wages in violation of the New Jersey Wage Hour Laws.  NJWHL prohibits an "employer" from failing to pay it employees at least the federal minimum hourly wage rate set by the FLSA and at least time and a half for working in excess of forty hours a week.  N.J. Stat. Ann. §§ 34:11-56a; 34:11-56a4.  To determine whether an entity or individual is an "employer" under the NJWHL, courts consider whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employees' work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  *Wang v. Chapei LLC*, Civil Action No. 15-2950 (MAS) (DEA), 2020 WL 468858, at * 6 (D.N.J. Jan 29, 2020) (internal quotations omitted).

15.     Here, Plaintiff's Complaint does not allege that Sukhram was his employer for the purposes of NJWHL.  Further, Plaintiff failed to allege any facts to demonstrate, or from which a reasonable inference could be made, that Sukhram acted as his employer.  Plaintiff did not allege that Sukhram had the power to hire and/or fire him, controlled Plaintiff's work schedule or the conditions of his employment, determined Plaintiff's rate and method of payment, or maintained Plaintiff's employment records.  Therefore, Plaintiff failed to assert any colorable grounds supporting his claims against Sukhram because Plaintiff failed to explicitly or implicitly allege that Sukhram was Plaintiff's employer.

92458401v.2

16.     Plaintiff also asserts claims under the Wage Theft Act for retaliation and/or adverse employment action against Sukhram.  WTA amended the NJWHL as well as the New Jersey Wage Payment Law ("NJWPL").  *Perloff v. SoMo Audience Corp.*, Civil Action No. 2:19-cv-09172-KSH-CLW, 2020 WL 7183552, at *1 (D.N.J. Aug. 7, 2020).  While not explicitly stated in the Complaint, Plaintiff's allegations arise under the amendments to the NJWPL.

17.     Specifically, NJWPL, as amended by WTA, prohibits an employer from taking a retaliatory action against an employee because the employee complained that the employer did not pay the employee's full wages.  N.J. Stat. Ann. § 34:11-4.10(a).  While the NJWPL imposes individual liability, individual liability is restricted to the entity's officers and any agents having management authority over the entity.  *State of New Jersey v. Haig's Serv. Corp.*, Civ. No. 12-4797 (WJM), 2016 WL 4472952, at *11 (D.N.J. Aug. 24, 2016).

18.     As with his claims under NJWHL, Plaintiff has not explicitly alleged that Sukhram was his employer for the purposes of NJWPL.  Nor has Plaintiff alleged that Sukhram was an officer or agent with management authority sufficient to make a colorable claim under NJWPL against Sukhram.

19.     For these reasons, Plaintiff has no reasonable grounds for his claims under NJWHL and NJWPL, as amended by the Wage Theft Act, against Sukhram.

**ii.     *Plaintiff's Claims under NJLAD against Sukhram Are Baseless.***

20.     The New Jersey Law Against Discrimination prohibits unlawful employment practices and discrimination by an employer.  *Tarr v. Ciasulli*, 853 A.2d 921, 928 (2004).  However, the definition of employer does not include an individual supervisor.  *Gross v. City of New Jersey*, Civil Action No. 18-9802, 2019 WL 2120312, at *3 (May 15, 2019) (*citing Tarr*, 853 A.2d at 928).  Instead, "individual liability of a supervisor for acts of discrimination or for creating

6

or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person[]'" under the statute. *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (2008). Here, Plaintiff did not specifically plead an aiding and abetting theory against Sukhram. In fact, the terms "aiding" and "abetting" are absent from Plaintiff's Complaint. Therefore, Plaintiff has not provided a reasonable ground or colorable basis on which to assert claims under NJLAD against Sukhram. *See, e.g., Bobo v. Wildwood Public Schs. Bd. Of Educ.*, Civil No. 13–5007 (RBK/KMW), 2014 WL 7339461, at *16 (D.N.J. Dec. 23, 2014) (dismissing plaintiff's NJLAD claims against individual employees where the complaint did not specifically state that the employees "aided" or "abetted" the plaintiff's employer); *see also White v. Cleary*, Civil Action No. 09–4324 (PGS), 2012 WL 924338, at * 5 (D.N.J. Mar. 19, 2012) (dismissing plaintiff's claim under NJLAD against individual employees as a matter of law because plaintiff failed to specifically plead an aiding and abetting theory).

> **a. Even if Plaintiff alleged Sukhram aided and abetted the Corporate Defendants, Plaintiff has not alleged a reasonable ground or colorable claim of race, national origin, or disability discrimination under NJLAD against Sukhram.**

21.     Assuming that Plaintiff sufficiently pled that Sukhram could be held liable in his individual capacity under NJLAD—which he did not—Plaintiff also failed to plead a colorable claim of race, national origin, or disability discrimination against Sukhram.

22.     To establish a claim of race and/or national origin discrimination, Plaintiff must show that he: (1) is a member of a protected class; (2) was qualified; and (3) was subject to adverse employment action under circumstances giving rise to an inference of discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

23.     With respect to his national origin discrimination claim, Plaintiff failed to plead membership to a protected national origin.

> National origin usually refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came.  In some cases, however, courts have been willing to expand the concept of "national origin" to include claims from persons such as cajuns or serbs based upon the unique historical, political and/or social circumstances of a given region.

*Vitalis v. Sun Constructors, Inc.*, 481 Fed. App'x 718, 721 (3d Cir. 2012) (internal quotations omitted).

24.     Here, Plaintiff did not identify his national origin in the Complaint.  Without facts identifying Plaintiff's particular national origin, there are no circumstances that can give rise to an inference of national origin discrimination by Sukhram.  Therefore, Plaintiff's allegations are insufficient to raise a colorable claim of national origin discrimination against Sukhram.

25.     Plaintiff also has not pled any circumstances that support an inference of race discrimination.  The Complaint alleges a handful of statements and/or conduct by Sukhram toward Plaintiff.  ***Ex. A***, Compl. at ¶ 22-23.  However, Plaintiff has not pleaded facts suggesting that Sukhram made these alleged statements and/or that such conduct occurred because of Plaintiff's race.  In fact, Plaintiff has not alleged sufficient facts to demonstrate any relationship at all between the alleged conduct and statements and his race.  Thus, Plaintiff has not pled any facts or circumstances giving rise to an inference of discrimination by Sukhram against Plaintiff on the basis of Plaintiff's race.

26.     Plaintiff also failed to allege facts sufficient to assert a colorable claim of disability discrimination.   To establish a *prima facie* case of disability discrimination, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was otherwise qualified and performing the essential functions of the job; (3) he was terminated; and (4) his employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *Joseph v. N.J. Transit Rail Operations Inc.*, 586 Fed. Appx. 890, 892 (3d Cir. 2014).

27.     Here, Plaintiff did not pled that he was qualified and performing the essential functions of the job.  Instead, Plaintiff admitted that he was terminated merely three months earlier for crashing his forklift.  *Ex. A*, Compl. at ¶ 24.  Furthermore, Plaintiff's Complaint fails to allege any facts whatsoever in support of the final element of the *prima facie* case of disability discrimination under the NJLAD. Plaintiff makes no allegations at all regarding Sukhram's efforts to hire someone to replace him, let alone that Sukhram sought similarly qualified individuals who were not disabled.  *See Taylor v. Lincare, Inc.*, Civil No. 15-6284 (RMB/JS), 2016 WL 3849852, at * 4 (D.N.J. July 15, 2016) (dismissing plaintiff's complaint for failing to adequately plead the second and fourth elements of disability discrimination).

28.     For these reasons, Plaintiff's Complaint fails to plead reasonable bases in fact or colorable grounds supporting his race, national origin, and disability discrimination claims under NJLAD against Sukhram.

> **b.  Even if Plaintiff alleged that Sukhram aided and abetted the Corporate Defendants, Plaintiff also has not alleged a reasonable ground or colorable claim for failure to accommodate under NJLAD against Sukhram.**

29.     To establish a claim under NJLAD for failure to make a reasonable disability accommodation, Plaintiff must allege that: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.  *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).

30.     Plaintiff's failure to accommodate claim is premised on a single conclusory allegation regarding the availability of light duty.  *Ex. A*, Compl. at Count Eleven [sic].[3]  However, the Complaint is completely devoid of facts alleging that Plaintiff ever requested light duty work,

---

[3] Plaintiff's Complaint misnumbered the causes of action asserted.

or any accommodation at all.  Plaintiff also failed to allege facts demonstrating that Sukhram refused make a good faith effort to accommodate Plaintiff's request—likely because Plaintiff has not alleged that Plaintiff requested any such accommodation from Sukhram or anyone else or that Sukhram was in a position to approve any alleged light duty request.  Finally, while Plaintiff claims that "light duty work" was available, he did not plead any facts to support that light duty was a reasonable accommodation based on the work he performed.  As such, Plaintiff has not raised a reasonable basis or colorable ground to assert a failure to accommodate claim under NJLAD against Sukhram.

### iii.   *Sukhram Is Not Individually Liable for Plaintiff's CEPA, Pierce, or Workers' Compensation Retaliation Claims.*

31.    Plaintiff asserted common law and statutory retaliatory discharge claims against Sukhram.  However, Plaintiff's Complaint fails to provide a reasonable basis or colorable ground to ultimately impose liability against Sukhram in his individual capacity for any of these causes of action.

### a.  Plaintiff's Complaint is insufficient to demonstrate individual liability for CEPA retaliatory discharge against Sukhram.

32.    To establish a *prima facie* case under Conscientious Employee Protection Act, Plaintiff must demonstrate that: (1) he reasonably believed that his employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a "whistle-blowing" activity described in N.J. Stat. Ann. § 34:19–3(c); (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  *Dewelt v. Measurement Specialties, Inc.*, Civil Action No. 02–cv–3431 (PGS), 2007 WL 542234, *4 (D.N.J. Feb. 16, 2007) (*citing Dzwonar v. McDevitt*, 828 A.2d 893, 900 (2003)).  Although CEPA can impose individual

92458401v.2

liability on agents or employees of the employer entity, it will not impose liability on any employee or supervisor unless Plaintiff proves that the individual defendant took an adverse employment action against Plaintiff because of his whistle blowing. *Brennan v. Palmieri*, Civil Case No. 07–4364 (FSH), 2008 WL 5233782, at *6 (D.N.J. Dec. 12, 2008). Therefore, Plaintiff is required to include factual allegations that, if accepted as true, could establish how Sukhram was personally liable for a CEPA violation. *See id.* For example, Plaintiff's Complaint would need to show how Sukhram took a retaliatory adverse employment action against Plaintiff that was causally linked with Plaintiff's alleged disclosure of unethical, unlawful, illegal, fraudulent, and corrupt activity. *See id.*

33.     Plaintiff's Complaint alleges that he complained about allegedly "unsafe work conditions" and "illegal work practices" as the basis for his CEPA retaliation claim. ***Ex. A***, Compl. at ¶ 31 and Count Two. However, even accepting these allegations as true, Plaintiff's Complaint does not allege any facts demonstrating that Sukhram individually took any retaliatory adverse employment actions against Plaintiff that was causally linked with Plaintiff's alleged complaints. Indeed, Plaintiff does not even allege that Sukhram was aware of the alleged complaints. Moreover, Plaintiff does not allege the timing between his alleged complaints and his termination or any disciplinary action Plaintiff faced. Plaintiff does not even allege that Sukhram had the authority to terminate Plaintiff's employment. In fact, Plaintiff does not allege that Sukhram specifically played any role at all in Plaintiff's termination.

34.     For these reasons, Plaintiff has not pled any reasonable basis or colorable ground to assert a CEPA retaliation claim against Sukhram.

92458401v.2

**b. Plaintiff's Complaint fails to support a *Pierce* claim against Sukhram.**

35.    A *Pierce* common law wrongful discharge claim allows an at-will employee to assert a wrongful termination claim when his discharge was contrary to a clear mandate of public policy. *Bobo v. Wildwood Public Schs. Bd. Of Educ.*, Civil No. 13–5007 (RBK/KMW), 2014 WL 7339461, at *10 (D.N.J. Dec. 23, 2014).  However, only employees who personally participate in the tort of wrongful discharge may be held individually liable. *Ballinger v. Delaware River Port Authority*, 800 A.2d 97, 110 (2002).

36.    Here, as with Plaintiff's CEPA claim discussed above, Plaintiff has not pled any facts demonstrating Sukhram's participation in his allegedly wrongful discharge.  Thus, Plaintiff has not pled a reasonable basis or colorable ground to support imposing individual liability against Sukhram for Plaintiff's *Pierce* Claim.

**c. Plaintiff's Complaint does not demonstrate Sukhram's liability for workers' compensation retaliation.**

37.    To make a *prima facie* case for a retaliatory discharge relating to a workers' compensation claim, Plaintiff must prove that he: (1) made or attempted to make a claim for workers' compensation; and (2) was discharged in retaliation for making that claim. *Cerracchio v. Alden Leeds, Inc.*, 538 A.2d 1292, 1297 (1988).  Here, Plaintiff's workers' compensation retaliation claim against Sukhram fails for similar reasons as his CEPA and *Pierce* claims.  Plaintiff has not pled any facts demonstrating the timing between filing or attempting to file his workers' compensation claim and his termination.  Further, not only has Plaintiff failed to make any allegations regarding Sukhram's involvement in Plaintiff's termination, Plaintiff also has not alleged that Sukhram was even aware of Plaintiff's actual or attempted workers' compensation claim.  As such, the Complaint fails to allege sufficient facts that Sukhram terminated Plaintiff in retaliation for Plaintiff's workers' compensation claim.

92458401v.2

38.     For these reasons, Plaintiff has not asserted a colorable ground or reasonable basis to support his workers' compensation retaliatory discharge claim against Sukhram.

> **iv.     Plaintiff's Has Not Pled Sufficient Facts to Support Intentional or Negligent Infliction of Emotional Distress Claims against Sukhram.**

39.     To demonstrate a cause of action for emotional distress, Plaintiff must allege "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kennedy v. American Airline Inc.*, 195 F. Supp. 3d 646, 658 (D.N.J. 2016) (*quoting Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 316 (D.N.J. 2016)).  Importantly, New Jersey sets a high bar for a plaintiff to establish extreme and outrageous conduct.  *Hamza v. United Continental Holdings, LLC*, Civil Action No. 19-8971 (FLW) (TJB), 2020 WL 5757807, at *5 (D.N.J. 2020). In fact, in  the employment context, courts in New Jersey have noted that it is extremely rare to find conduct that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of infliction of emotional distress. *See Weber v. Don Longo, Inc.*, No. 15-2406, 2018 WL 1135333, at *18 (D.N.J. Mar. 2, 2018) (*quoting Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)) (analyzing a claim of intentional infliction of emotional distress); s*ee also Doll v. Port Authority Trans-Hudson Corp.*, 92 F. Supp. 2d 416, 423-24 (D.N.J. 2000) (analyzing a claim for negligent infliction of emotional distress).

40.     Here, Plaintiff's Complaint fails to specifically identify Sukhram's conduct upon which Plaintiff bases his intentional and/or negligent infliction of emotional distress claims.  In fact, the Complaint includes only two paragraphs discussing Sukhram's alleged conduct towards Plaintiff.  ***Ex. A***, Compl. at ¶¶ 22-23.  Yet, even accepting these allegations as true, Sukhram's conduct was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.  *See, e.g., Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940, 956  (D.N.J. 1991) (holding that the plaintiff failed to establish intentional infliction of emotional distress against his employer based on plaintiff's allegations that his employer: (i) threatened to terminate the plaintiff for performance; (ii) requested that the plaintiff resign; (iii) overworked the plaintiff; (iv) required the plaintiff to attend counseling sessions dealing with his performance; (v) told the plaintiff he was not doing a good job; (vi) gave the plaintiff warning notices; and (vii) closely monitored the plaintiff).

41.     Further, Plaintiff also has not alleged sufficient facts to demonstrate that Sukhram, actually caused Plaintiff to suffer from severe emotional distress necessary to support his claims.[4] For example, in *Mardini v. Viking Freight, Inc.*, the court dismissed the plaintiff's claim for intentional infliction of emotional distress where the plaintiff pled that she had become physically distraught, sustained a shock to her nervous system, and suffered severe emotional distress, but did not alleged that she had to seek medical assistance, nor did she allege any specific ailments that afflicted her as a result of defendants' conduct.  Here, like *Mardini*, Plaintiff does not claim that Sukhram's conduct necessitated that Plaintiff seek medical treatment or resulted in any specific medical ailments or conditions.  As such, Plaintiff's pleadings do not assert that Plaintiff in fact suffered from severe emotional distress as a result of Sukhram's conduct.

42.     Therefore, Plaintiff lacks a reasonable basis or colorable ground to support claims of negligent or intentional infliction of emotional distress against Sukhram.

---

[4] The same level of emotional distress required for an intentional infliction of emotional distress claim is required to sustain a claim for negligent infliction of emotional distress.  *D'Angelo v. Ocwen Loan Servicing, LLC*, DOCKET NO. A–4195–14T2, 2017 WL 712781, at *9 (App. Div. Feb. 23, 2017).

### v.   Respondeat Superior Liability Is Applicable to Sukhram.

43.   Plaintiff claim for *respondeat superior* fails against Sukhram for several reasons. First, there is no separate cause of action for *respondeat superior*.  *Allia v. Target Corp.*, Civ. Action No. 07–4130(NLH), 2008 WL 1732964, at *6 (D.N.J. April 10, 2008).  Further, the r*espondeat superior* doctrine is a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of its servants or employees. *Carter v. Reynolds*, 815 A.2d 460, 463 (2003).  Here, Sukhram is the "servant" for whose alleged wrongful conduct Plaintiff seeks to impose liability on the Corporate Defendants.  Therefore, the *respondeat superior* theory of liability is inapplicable to Sukhram.

44.   Ultimately, Plaintiff has no reasonable bases in fact or colorable grounds supporting any of the twelve causes of action asserted in this lawsuit against Sukhram.  Therefore, because Plaintiff fraudulently joined him in order to defeat diversity jurisdiction, the Court can disregard Sukhram's citizenship.  As such, there is complete diversity between the properly-joined parties in this case.

### C.   Amount In Controversy Exceeds $75,000

45.   Although Plaintiff does not plead a specific amount of damages in his Complaint, the amount in controversy claimed by Plaintiff exceeds $75,000, exclusive of interest and costs.

46.   "Where a complaint does not limit its request to a precise monetary amount, a court must independently appraise the claim's value." *Aviles v. Tilson*, Civil Action No. 18-1940-BRM-DEA, 2018 WL 4489681, at *3 (D.N.J. Sep. 19, 2018) (citations omitted).  In doing so, the "[C]ourt can look beyond the face of the petition" and "look to entire record" to determine if diversity jurisdiction exists.  *See Fagan v. Jaffe*, Civil Action No. 08-640 (PGS), 2008 WL 4155637, at *2 (D.N.J. Sept. 9, 2008) (internal citations omitted).

47.     Further, although the Corporate Defendants must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, "that burden is not especially onerous." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 395 (3d Cir. 2016).  This is because "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Id.* (*quoting Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

48.     To determine the amount in controversy, the Court may consider non-frivolous claims of punitive damages. *See Avraham v. Golden*, Case No. 18-11795 (SDW) (JAD), 2020 WL 2214535, at *10 (D.N.J May 7, 2020).  Punitive damages, if awarded, can increase the amount recovered by Plaintiff beyond the jurisdictional requirement, where, as here, punitive damages are available as a matter of state substantive law for actions alleged by Plaintiff.  *See Hann v. The Home Depot*, 1:18-cv-10223-NLH-JS, 2019 WL 479348, *4 (D.N.J. Feb. 7, 2019) (NJLAD); *see also Longo v. Pleasure Prods., Inc.*, 71 A.3d 775, 64-65 (2013) (CEPA).  In such cases, punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of Plaintiff's claim is below the statutory minimum.  *Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004).

49.     Further, attorney's fees are also part of the amount in controversy if there is fee-shifting (i.e., if attorney's fees are available to successful plaintiffs under the causes of action asserted).  *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997).   Several of the claims asserted in the Complaint allow Plaintiff, if he is successful in the lawsuit, to recover attorneys' fees.  *See, e.g.*, N.J. Stat. Ann. § 10:5-27.1 (NJLAD); N.J. Stat. Ann. § 34:11-4.10 (NJWPL); N.J. Stat. Ann. § 34:11-56a25 (NJWHL).  The Court may also consider emotional distress damages in calculating the amount in controversy.  *See Avraham*, 2020 WL 2214535, at *10.  The amount in

16

controversy also necessarily includes the treble damages available to Plaintiff for the WTA/NJWPL claims asserted by Plaintiff.  *See* N.J. Stat. Ann. § 34:11-4.10.

50.     Although Defendant will be able to establish that it has fully complied with all applicable laws and that Plaintiff is not entitled to any damages, Plaintiff's lawsuit seeks damages in excess of $75,000 based on the claims asserted and categories of damages sought. Specifically, in his Complaint, Plaintiff requests extensive monetary remedies such as compensatory, consequential, incidental damages, including front pay, back pay, and loss of benefits, as well as civil penalties.  He also demands punitive damages and attorney's fees.  *See **Ex. A***, Compl. at "WHEREFORE" clauses.

51.     Combining Plaintiff's potential treble damages, attorney's fees, and punitive damages, and other damages that Plaintiff is seeking in this case, the amount in controversy well exceeds $75,000.  *See, e.g., Hann*, 2019 WL 479348, at *4 (denying plaintiff's motion to remand because the alleged damages for the plaintiff's claims—compensatory damages, punitive damages, and attorneys' fees—"readily establish the jurisdictional threshold").

52.     Therefore, the amount in controversy exceeds the $75,000 jurisdictional limit, exclusive of costs and interest.

### III.    PROCEDURAL REQUIREMENTS

53.     Removal of the State Court Action is proper under 28 U.S.C. §§ 1441 and 1446.

### D.  Venue

54.     The State Court Action is located within the District of New Jersey. Therefore, venue for purposes of removal is proper because the United States District Court for the District of New Jersey embraces the place in which the removed action was pending. 28 U.S.C. § 1441(a).

17

**E.  Timeliness of Removal**

55.      This Notice of Removal is filed by the Corporate Defendants within thirty (30) days after the receipt by Corporate Defendants, through service of summons, of a copy of the initial pleading setting forth the claims for relief upon which this action is based.  *See* 28 U.S.C. § 1446(b).  Further, this Notice of Removal is filed within one (1) year from commencement of the State Court Action and, therefore, is timely under 28 U.S.C. § 1446(b).

**F.  Sukhram's Consent Not Required**

56.      When a civil action is removed solely under section 1441(a), all defendants who have been ***properly joined and served*** must join in or consent to the removal.  28 U.S.C. § 1446(b)(2)(A) (emphasis added).  This is commonly referred to as the "rule of unanimity."  *Allen v. Bongiovi*, Civil No. 07-44(RBK), 2007 WL 869535, at *3 (D.N.J. Mar. 19, 2007).  However, the rule of unanimity may be disregarded where a defendant has been fraudulently joined.  *Id.*  As previously established, Plaintiff fraudulently named Sukhram as a defendant in this case to defeat diversity jurisdiction.  Further, as of the filing of this Notice of Removal, Plaintiff has not yet served Sukhram.  As such, Plaintiff has not properly joined or served Sukhram as of the filing of this Notice of Removal.  Therefore, Sukhram's consent is not required to file this Notice of Removal.

**G.  Other Procedural Requirements**

57.      A copy of this Notice of Removal will be promptly served upon counsel for Plaintiff and filed with the Clerk of the  Superior Court of New Jersey, Law Division: Union County.  *See* 28 U.S.C. §§ 1446(a), (d).

58.      This Notice of Removal is signed by the Corporate Defendants' counsel pursuant to Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

92458401v.2

## IV.   <u>CONCLUSION</u>

59.     By this Notice of Removal, the Corporate Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections they may have to this action. Defendants intend no admission of fact, law, or liability by this Notice of Removal and expressly reserve all defenses, motions, and/or pleas.

Dated: July 8, 2021

By: */s/ Christopher B. Fontenelli*
Christopher B. Fontenelli (082532014)
Locke Lord LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
T: 212-912-2730
Email: cfontenelli@lockelord.com

Paulette Brown
Locke Lord LLP
Forrestal Village 116
Village Boulevard Suite 200 – Office 30
Princeton, New Jersey 08540
Email: Paulette.Brown@lockelord.com

Kimberly Williams *(pro hac vice forthcoming)*
Locke Lord LLP
Chase Tower
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Email: kwilliams@lockelord.com

Akilah F. Craig *(pro hac vice forthcoming)*
Locke Lord LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1200
Email: akilah.craig@lockelord.com

**ATTORNEYS FOR KEURIG DR PEPPER INC.,
DR PEPPER/SEVEN-UP INC., AND MOTT'S LLP**

92458401v.2